**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONALD DEAN JOHNSON, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br>  v.<br><br>SEQUANS COMMUNICATIONS S.A., DR. GEORGES KARAM, DEBORAH CHOATE, MICHAEL ELIAS, JAMES PATTERSON, DAVID ONG, HUBERT DE PESQUIDOUX, DOMINIQUE PITTELOUD, ALOK SHARMA, ZVI SLONIMSKY, T. CRAIG MILLER, UBS LIMITED, and JEFFERIES & COMPANY INC.,<br><br>       Defendants. | Civil Action No. 1:11-cv-6341-PAC |
| NORMAN C. CAREY, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br>  v.<br><br>SEQUANS COMMUNICATIONS S.A., GEORGES KARAM, DEBORAH CHOATE, MICHAEL ELIAS, JAMES PATTERSON, DAVID ONG, HUBERT DE PESQUIDOUX, DOMINIQUE PITTELOUD, ALOK SHARMA, ZVI SLONIMSKY, T. CRAIG MILLER, UBS LIMITED, and JEFFERIES & COMPANY INC.,<br><br>       Defendants. | Civil Action No. 1:11-cv-7555-PAC |

**MEMORANDUM OF LAW IN SUPPORT OF VENUGOPAL NALAKONDA'S MOTION FOR (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT ...................................................................................................................... 5

    I.     THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ............ 5

    II.    NALAKONDA SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE
        CLASS ................................................................................................................ 6

        A.    The PSLRA's Provisions Concerning The Appointment Of A Lead
             Plaintiff ..................................................................................................... 6

        B.    Under The PSLRA, Nalakonda Should Be Appointed Lead
             Plaintiff ..................................................................................................... 7

            1.    Nalakonda Filed A Timely Motion ................................................. 7

            2.    Nalakonda Has The Largest Financial Interest In The Relief
                Sought By The Class ........................................................................ 8

            3.    Nalakonda Meets Rule 23's Typicality And Adequacy
                Requirements .................................................................................. 9

    III.   THE COURT SHOULD APPROVE NALAKONDA'S SELECTION OF
        THE FARUQI FIRM AS LEAD COUNSEL ...................................................... 11

CONCLUSION ................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Barnet v. Elan Corp.*,
   236 F.R.D. 158 (S.D.N.Y. 2005) ...........................................................................10

*Bassin v. Decode Genetics, Inc.*,
   230 F.R.D. 313 (S.D.N.Y. 2005) .............................................................................6

*Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ....................................................................5, 9, 11

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)............................9

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ..................................................................6, 7, 8, 9

*In re General Elec. Sec. Litig.*,
   No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ......... *passim*

*Greebel v. FTP Software, Inc.*,
   939 F. Supp. 57 (D. Mass. 1996) ..............................................................................8

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990), *cert denied*, 498 U.S. 920 (1990).............................5

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
   No. 11 Civ. 0917 (BSJ) (JCF), 2011 U.S. Dist. LEXIS 54939
   (S.D.N.Y. May 19, 2011)...................................................................................11, 12

*Lax v. First Merchants Acceptance Corp.*,
   No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .................8

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993)......................................................................................5

*In re Nice Sys., Ltd. Sec. Litig.*,
   188 F.R.D. 206 (D.N.J. 1999)....................................................................................8

*In re Orion Sec. Litig.*,
   No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) .................10

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corp.*,
   No. 11 Civ. 733 (WHP), 2011 U.S. Dist. LEXIS 69022 (S.D.N.Y. June 20, 2011) ..............10

*Strougo v. Brantley Capital Corp.*,
   243 F.R.D. 100 (S.D.N.Y. 2007) ..............................................................................9

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ...............................................................5, 7

## STATUTES

15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I) .......................................................6, 7, 8

15 U.S.C. § 78u-4(a)(3)(A)(i) ......................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(i) ......................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(ii) ..................................................................1, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) .................................................................2. 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ..........................................................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...............................................................7

15 U.S.C. § 78u-4(a)(3)(B)(v) .................................................................2, 11

Section 21D(a)(3)(B) of the Private Securities Litigation Reform Act of 1995,
   15 U.S.C. § 78u-4(a)(3)(B) ..................................................................1, 9

Section 21D(a)(2) ........................................................................................8

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ...............1

Securities Act of 1933 ...............................................................................1

## OTHER AUTHORITIES

Fed. R. Civ. P. Rule 10b-5 .........................................................................1

Fed. R. Civ. P. Rule 23 .......................................................................2, 7, 9

Fed. R. Civ. P. Rule 23(a) ..........................................................................9

Fed. R. Civ. P. Rule 23(a)(4) ....................................................................10

Fed. R. Civ. P. Rule 42(a) ......................................................................2, 5

Movant Venugopal Nalakonda ("Nalakonda"), on behalf of himself and the Class defined

herein, respectfully submits this memorandum of law pursuant to Section 21D(a)(3)(B) of the

Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in

support of his motion for the entry of an order: (1) consolidating the Actions (defined below)

and any related actions that may be filed; (2) appointing Nalakonda as Lead Plaintiff for the

Actions; and (3) approving Nalakonda's selection of the law firm of Faruqi & Faruqi, LLP (the

"Faruqi Firm") as Lead Counsel.

## PRELIMINARY STATEMENT

Presently pending before the Court are two securities class actions (the "Actions")[1]

brought on behalf of a putative class (the "Class") of investors who suffered damages as a result

of their transactions in Sequans Communications S.A. ("Sequans" or the "Company") securities

during the period from April 15, 2011 through and including July 27, 2011 (the "Class Period").

In connection therewith, various movants seek: (1) to consolidate all related actions; (2) to be

appointed lead plaintiff; and (3) to approve their selection for lead counsel.

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15

U.S.C. § 78u-4(a)(3)(B)(ii). On this threshold question, little doubt exists. The Actions each

assert claims for violations of (i) Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the

"Securities Act") and (ii) Sections 10(b) and 20(a) of the Securities Exchange Act of 1934

("Exchange Act") and Securities Exchange Commission ("SEC") Rule 10b-5 promulgated

thereunder. The Actions also allege substantially the same misconduct by Sequans, the

Company's officers and directors, and underwriters participating in Sequans' initial public

---

[1]    The Actions consist of the following matters: (i) *Johnson v. Sequans Communications S.A., et al.*, No. 1:11-cv-6341-PAC; and (ii) *Carey v. Sequans Communications S.A., et al.*, No. 1:11-cv-7555-PAC.

1

offering ("IPO") on April 15, 2011.  Because the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated under Federal Rule of Civil Procedure 42(a).

With respect to the appointment of a lead plaintiff to oversee the consolidation Actions, Congress established a presumption in the PSLRA that requires the Court to appoint as lead plaintiff the "person or group of persons" who demonstrate the "largest financial interest in the litigation" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

With total losses of $123,365.63, Nalakonda, to the best of counsels' knowledge, has the largest financial interest in the litigation of any movant.  Nalakonda also satisfies Rule 23's typicality and adequacy requirements.  Nalakonda's claims are typical of the Class's claims because he suffered losses in his Sequans investments as a result of the defendants' false and misleading statements.  Further, Nalakonda has no conflict with the Class and will adequately protect the Class's interests given Nalakonda's significant stake in the litigation and his conduct to date in prosecuting the litigation, including his submission of the requisite certification and selection of experienced class counsel.  Accordingly, Nalakonda is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Nalakonda is entitled to select, subject to the Court's approval, lead counsel to represent the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Nalakonda has engaged the Faruqi Firm for this purpose.  The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced plaintiffs' firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Nalakonda's motion should be granted in its entirety.

## FACTUAL BACKGROUND

This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased the American Depositary Shares ("ADS") of Sequans pursuant to and/or traceable to the Company's IPO on or about April 15, 2011, as well as purchasers of the Company's ADS during the Class Period.

Defendant Sequans designs, develops, and supplies 4G semiconductors solutions for wireless broadband applications.  The 4G market consists mainly of two primary technologies, WiMAX and 4G LTE.  The WiMAX technology is used in certain phones and other devices that run on certain networks (specifically Sprint), but is generally considered to be slower than the newer 4G LTE technology being built out and offered by certain other carriers, including Verizon Wireless and AT&T Wireless.  At the time of the IPO, the Company derived substantially all of its revenues from sales to the WiMAX segment of the 4G market.

On or about March 22, 2011, Sequans filed a Form F-1 Registration Statement (the "Registration Statement") with the SEC, for purposes of the IPO.  On or about April 14, 2011, the Prospectus with respect to the IPO (the "Prospectus"), which forms part of the Registration Statement, became effective and 7.7 million shares of Sequans' ADS were sold to the public at $10 per ADS, thereby raising $77 million.

Defendants failed to disclose in the Registration Statement at the time of the IPO that: (1) the Company's revenues from its WiMAX products were declining; (2) the Company was not in a position to generate any meaningful revenues from sales of 4G LTE; (3) the Company's largest customer, HTC, and the wireless industry in general, was focusing more on 4G LTE offerings as opposed to WiMAX offerings, including WiMAX products offered by the

Company; (5) the Company, instead of experiencing sales growth during 2011, would in fact experience sales declines during the period; (6) the Company was becoming increasingly more dependent upon sales from its largest customer, HTC, and sales from that customer declined and would continue to decline; and (7) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

On July 28, 2011, Sequans disclosed disappointing financial results for the second quarter ended June 30, 2011.  For the quarter, the Company only reported a net profit of $0.1 million, or $0.00 per diluted ADS, compared to a net profit of $1.9 million or $0.07 per diluted ADS in the first quarter of 2011 and a net profit of $0.6 million or $0.02 per diluted ADS in the second quarter of 2010.  Moreover, the Company disclosed a disappointing outlook for the third quarter of 2011, where it expects revenue to be in the range of only $25 to $28 million.  In response to the news, Sequans ADS declined $6.88, or more than 44.5%, to close at $8.55 on July 28, 2011.

As a result of these materially false and misleading statements and omissions, Sequans ADS traded at artificially inflated prices throughout the Class Period.   Nalakonda and the Class purchased or otherwise acquired Sequans securities relying upon the integrity of the market price of Sequans ADS and market information relating to Sequans and have been damaged thereby. After the above revelations seeped into the market, the Company's shares were hammered by massive sales that sent Sequans' share price down from its Class Period high of $19.17 per ADS on May 31, 2011.

The Actions are the only chance Class members will have to receive compensation for defendants' false and misleading statements and omissions, and Nalakonda seeks to ensure that investors receive the maximum possible recovery.

## ARGUMENT

## I.   THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding appointment of the lead plaintiff for the consolidated action "as soon as practicable after [the consolidation] decision is rendered").

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990), *cert denied*, 498 U.S. 920 (1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (consolidating securities class actions).  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *In re General Elec. Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4-8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Actions at issue here clearly involve common questions of facts *and* law.  The Actions assert claims under the Securities Act and the Exchange Act on behalf of investors who were harmed by Sequans, various Company's officers and directors, and Sequans' IPO

underwriters.  The Actions allege substantially the same wrongdoing, namely that defendants issued materially false and misleading statements and omissions that artificially inflated Sequans' share price and damaged the Class when the truth emerged and Sequans' share price crashed.  Consolidation of the Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re General Elec.*, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary cost to the parties.").

## II.     NALAKONDA SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A.     The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I).  It provides that within 20 days of the filing of the action, the plaintiff in the first-filed action is required to publish a notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members."  Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that:

(aa)    has either filed the complaint or made a motion in response to a notice (published by a complainant);

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Foley*, 272 F.R.D. at 127 (describing the PSLRA's two-step competitive process for determining the "most adequate plaintiff"); *In re Tronox*, 262 F.R.D. at 343-44 (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Foley*, 272 F.R.D. at 127; *In re Tronox*, 262 F.R.D. at 344.

**B.     Under The PSLRA, Nalakonda Should Be Appointed Lead Plaintiff**

As discussed below, Nalakonda should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Nalakonda holds the largest financial interest of any movant, and Nalakonda otherwise satisfies Rule 23's typicality and adequacy requirements.

**1.     Nalakonda Filed A Timely Motion**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Actions was required to publish notice of the complaint within twenty (20) days of its filing. Counsel for Donald Johnson published notice of the lead plaintiff deadline via *Business Wire* on

September 9, 2011.[2]  *See* Gonnello Decl., Ex. A.[3]  Consequently, any member of the proposed

Class in the Actions was required to seek to be appointed lead plaintiff within 60 days after

publication of the notice (*i.e.*, on or before November 8, 2011).  *See* 15 U.S.C. § 78u-

4(a)(3)(A)(i).  Thus, Nalakonda's motion, which was filed on November 8, 2011, was timely

filed.  Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Nalakonda timely

signed and submitted a certification with his motion, identifying all of his relevant Sequans

trades during the Class Period, and detailing Nalakonda's suitability to serve as lead plaintiff in

this case.  *See* Gonnello Decl., Ex. B.  The PSLRA's procedural requirements have therefore

been met.

### 2.    Nalakonda Has The Largest Financial Interest In The Relief Sought By The Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate

plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief

sought by the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to the methodology courts are to use in determining

which movant has the largest financial interest in the relief sought, courts in this Circuit often

look to four factors in the inquiry:  (1) the number of shares purchased during the Class Period;

(2) the number of net shares purchased during the Class Period; (3) the total net funds expended

during the Class Period; and (4) the approximate losses suffered.  *See Foley*, 272 F.R.D. at 127-

28 (citations omitted); *In re General Elec.,* 2009 U.S. Dist. LEXIS 69133, at *9.  Courts have

---

[2]    Publication by *Business Wire* is an adequate means for meeting the statutory requirement
that notice be published "in a widely circulated business-oriented publication or wire service."
*See In re Nice Sys., Ltd. Sec. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999); *Greebel v. FTP
Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchants Acceptance
Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

[3]    All references to Exhibits are references to the exhibits annexed to the Declaration of
Richard W. Gonnello, dated November 8, 2011, filed in support hereof.

placed the most emphasis on the last of the four factors:  the approximate loss suffered by the movant.  *Foley*, 272 F.R.D. at 128 (citations omitted); *In re General Elec.*, 2009 U.S. Dist. LEXIS 69133, at *11 (citation omitted).

Overall, Nalakonda purchased 11,415 shares of Sequans ADS during the Class Period, expended $190,214.15 net funds, and suffered losses of $123,365.63[4] when calculated using either a first in, first out ("FIFO") methodology or last in, first out ("LIFO") methodology.[5]  *See* Gonnello Decl., Exs. C and D.  Nalakonda is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3.   Nalakonda Meets Rule 23's Typicality And Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA also requires that the lead plaintiff satisfy Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B).  When assessing potential lead plaintiffs, only Rule 23(a)'s typicality and adequacy requirements are relevant.  *See, e.g.*, *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *see also Blackmoss*, 252 F.R.D. at 191 ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (citation omitted).

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Blackmoss* 252 F.R.D. at 191 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960

---

[4]   Because Nalakonda held his 11,415 shares through the end of the Class Period, the losses are calculated based on Sequans' average closing price of $5.8562 per share between July 28, 2011 and October 26, 2011, which represents the 90-day period immediately following dissemination to the market of the information correcting the omissions and misstatements inflating the share price.  *See* 15 U.S.C. §78u-4(e)(1).

[5]   These calculations are solely for purposes of this motion and are not meant to represent the amount of, or method of calculation of, damages that plaintiffs may present at trial.

F.2d 285, 291 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).  However, the claims of the

class representative need not be identical to those of all members of the class.  *Id.*; *In re Orion*

*Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7,

2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs

and those of other class members does not destroy typicality, as similarity of legal theory may

control even in the face of differences of fact.") (internal quotations and citation omitted).

     Nalakonda's claims are clearly typical of the Class's claims.  Nalakonda purchased

Sequans' securities during the Class Period, suffered damages as a result of the Company's false

and misleading statements, and possesses claims against Sequans and its officers and/or directors

under the federal securities laws.  Because the factual and legal bases of Nalakonda's claims are

similar, if not identical, to those of the Class's claims, Nalakonda necessarily satisfies the

typicality requirement.  *See Barnet v. Elan Corp.*, 236 F.R.D. 158, 163 (S.D.N.Y. 2005) (investor

group typical where it asserted that it "purchased [company's] securities during the class period

and was injured by false and misleading representations made by defendants in violation of the

[Exchange] Act").

     With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly

and adequately protect the interests of the Class."  Adequate representation will be found if able

and experienced counsel represents the representative, and the representative has no fundamental

conflicts of interest with the interests of the class as a whole.  *See Pipefitters Local No. 636*

*Defined Benefit Plan v. Bank of America Corp.*, No. 11 Civ. 733 (WHP), 2011 U.S. Dist. LEXIS

69022, at *8 (S.D.N.Y. June 20, 2011) ("In considering the adequacy of a proposed lead

plaintiff, a court must consider:  (1) whether the lead plaintiff's claims conflict with those of the

class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the

litigation.") (citation omitted); *In re General Elec.*, 2009 U.S. Dist. LEXIS 69133, at *15 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel.").

As evidenced by the representations in Nalakonda's certification, his interests are perfectly aligned with – and by no means antagonistic to – the interests of the Class. *See Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11 Civ. 0917 (BSJ) (JCF), 2011 U.S. Dist. LEXIS 54939, at *4 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *Blackmoss*, 252 F.R.D. at 191 (same). Moreover, Nalakonda has selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class. As explained below in Section III, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. *See* Gonnello Decl., Ex. E. Consequently, Nalakonda is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Nalakonda respectfully submits that he is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## III.    THE COURT SHOULD APPROVE NALAKONDA'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain lead counsel for the Class, subject to the Court's approval. Nalakonda has selected the Faruqi Firm to be Lead Counsel for the Class. As reflected in the firm's resume, the Faruqi Firm possesses extensive experience litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Gonnello Decl., Ex. E. Accordingly, the Faruqi Firm is well qualified to represent the Class, and Nalakonda requests that the Court approve his selection of

the Faruqi Firm as Lead Counsel for the putative class.  *See Kokkinis*, 2011 U.S. Dist. LEXIS

54939, at *4-5 (citations omitted).

## CONCLUSION

For the foregoing reasons, Nalakonda respectfully requests that the Court:  (1)

consolidate the Actions and any related actions that may be filed; (2) appoint Nalakonda as Lead

Plaintiff for the Action; (3) approve Nalakonda's selection of the Faruqi Firm as Lead Counsel

for the Class; and (4) grant such other relief as the Court may deem just and proper.

Dated:  November 8, 2011

Respectfully submitted,

By:  */s/ Richard W. Gonnello*

**FARUQI & FARUQI, LLP**
Antonio Vozzolo
Richard W. Gonnello
Francis P. McConville
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: avozzolo@faruqilaw.com
          rgonnello@faruqilaw.com
          fmcconville@faruqilaw.com

*Attorneys for Plaintiff Venugopal Nalakonda*

12