UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

DONALD DEAN JOHNSON,                    :    Civil Action No. 11-cv-06341-PAC

                          Plaintiff,    :    CLASS ACTION

        vs.                             :    SETTLEMENT AGREEMENT

SEQUANS COMMUNICATIONS S.A., et al.,    :

                          Defendants.   :

——————————————————— x

868364_1

This Settlement Agreement dated October 31, 2013 (the "Stipulation"), is made and entered into by and among the following Settling Parties (as defined herein): (i) Lead Plaintiffs Gwendolyn January, Venugopal Nalakonda, Scott M. Callan, Dave Auyeung and Joseph C. Raines, by and through their counsel of record in the Litigation (as defined herein); and (ii) Sequans Communications S.A. ("Sequans" or the "Company"), George Karam, Deborah Choate, Michael Elias, James Patterson, David Ong, Hubert de Pesquidoux, Dominique Pitteloud, Alok Sharma, Zvi Slonimsky, T. Craig Miller, UBS Limited and Jefferies & Company, Inc. (collectively, "Defendants"), by and through their counsel of record in the Litigation. This Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I.     THE LITIGATION

On and after September 9, 2011, class action lawsuits were filed on behalf of Persons (other than Defendants) who purchased the American Depositary Shares ("ADSs") of Sequans pursuant and/or traceable to the Company's initial public offering on or about April 14, 2011, as well as purchasers of the Company's ADSs between April 14, 2011 and July 27, 2011, inclusive, against Defendants, alleging violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder.  By an order dated December 12, 2011, the Court consolidated all pending actions, appointed the Lead Plaintiffs pursuant to the requirements of the Private Securities Litigation Reform Act of 1995, and appointed Robbins Geller Rudman & Dowd LLP and Brower Piven, A Professional Corporation, to serve as Lead Counsel.  On February 1, 2012, Lead Plaintiffs filed a Consolidated Amended Complaint for Violations of Federal Securities

Laws ("Consolidated Complaint").  The Consolidated Complaint alleged that Defendants issued misleading statements and omitted material facts regarding market conditions for the wireless semiconductor industry.  Lead Plaintiffs alleged, *inter alia*, that Sequans made inadequate or misleading disclosures in the offering materials regarding HTC's future demand for Sequans' products, Clearwire's financial condition, the transition from Worldwide Interoperability for Microwave ("WiMAX") to Long Term Evolution ("LTE") technology, and Sequans' position in the LTE market.

Defendants denied all these allegations.  On January 17, 2013, the Court granted Defendants' motions to dismiss and gave Lead Plaintiffs 20 days to file a motion for leave to amend and a proposed amended complaint if amendment would not be futile.  On February 7, 2013, Lead Plaintiffs filed their Memorandum of Law in support of their motion for leave to file their Second Consolidated Amended Complaint for Violations of Federal Securities Laws.  Defendants filed their opposition to the motion on March 15, 2013.  The parties thereafter asked the Court to defer ruling on the motion pending resolution of mediation.

Following an in-person mediation session on June 7, 2013 with mediator Peter Bassett and additional telephonic exchanges regarding a potential settlement of the Litigation, the parties agreed to settle the action and executed a Memorandum of Understanding on August 9, 2013.

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and all of the claims and contentions alleged by Lead Plaintiffs in the Litigation.  Defendants expressly have denied and continue to deny any improper conduct or violation of the federal securities laws or any other laws or regulations and are settling the Litigation solely to avoid the burden, expense, and risks of further litigation.  In addition, Defendants have denied and continue to deny all charges of wrongdoing or liability against

them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation. Defendants also have denied and continue to deny, among other allegations, the allegations that the offering materials for Sequans' initial public offering were materially false or misleading; that Defendants omitted to disclose any information required to be disclosed by federal securities laws; that any information misstated or omitted was material; that Lead Plaintiffs or the Class have suffered any damage caused by Defendants; that the price of Sequans ADSs was artificially inflated by reasons of alleged misrepresentations, non-disclosures, or otherwise; or that Lead Plaintiffs or the Class were harmed by the conduct alleged in the Litigation. Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation and believe that the evidence developed to date supports their position that they acted properly at all times and that the Litigation is without merit.

Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendants have concluded that further conduct of the Litigation would be protracted, burdensome, and expensive, and that it is desirable that the Litigation be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Stipulation.

This Stipulation, and all related documents, shall not be construed as or deemed to be evidence of or an admission or concession on the part of the Defendants, or any of the Released Persons (as defined herein), with respect to any allegation or claim of any fault or liability or wrongdoing or damage whatsoever.

## III.    LEAD PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims. However, Lead Plaintiffs and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute

- 3 -

the Litigation against Defendants through trial and through appeals. Lead Plaintiffs and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiffs and Lead Counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Litigation. Lead Plaintiffs and Lead Counsel believe that under the circumstances present here, the Settlement set forth in the Stipulation confers substantial benefits upon the Class. Based on their evaluation, Lead Plaintiffs and Lead Counsel have determined that the Settlement set forth in the Stipulation is in the best interests of Lead Plaintiffs and the Class.

## IV.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (for themselves and the Class Members) and the Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the parties from the Settlement set forth herein, the Litigation, and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows.

### 1.   Definitions

As used in the Stipulation the following terms have the meanings specified below:

1.1   "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2   "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.3    "Class" means all Persons (other than those Persons and entities who timely and validly request exclusion from the Class) who purchased Sequans ADSs pursuant and/or traceable to the Company's initial public offering on or about April 14, 2011, as well as purchasers of the Company's ADSs during the time period April 14, 2011 through July 27, 2011, inclusive, excluding Defendants, the officers and directors of Defendants during the Class Period, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. The Defendants or any entity in which any of the Defendants has or had a controlling interest (for purposes of this paragraph, together a "Defendant-Controlled Entity") are excluded from the Class only to the extent that such Defendant-Controlled Entity itself purchased a proprietary (*i.e.*, for its own account) interest in the Company's ADSs. To the extent that a Defendant-Controlled Entity purchased Sequans ADSs in a fiduciary capacity or otherwise on behalf of any third-party client, account, fund, trust, or employee benefit plan that otherwise falls within the Class, neither such Defendant-Controlled Entity nor the third-party client, account, fund, trust, or employee benefit plan shall be excluded from the Class with respect to such Sequans ADSs.

1.4    "Class Member" or "Member of the Class" mean a Person who falls within the definition of the Class as set forth in ¶1.3 above.

1.5    "Class Period" means the period commencing on April 14, 2011 through and including July 27, 2011.

1.6    "Defendants" means Sequans, the Individual Defendants and the Underwriter Defendants.

868364_1

1.7    "Effective Date," or the date upon which this Settlement becomes "effective," means the first date by which all of the events and conditions specified in ¶8.1 of the Stipulation have occurred and been satisfied, respectively.

1.8    "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP or its respective successor(s).

1.9    "Final" means when the last of the following with respect to the Judgment approving the Stipulation, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the time in which to appeal the Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or petition or request for further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Stipulation.  For purposes of this paragraph, an "appeal" shall include any appeals as of right, discretionary appeals, interlocutory appeals, petitions for a writ of certiorari or mandamus, or other writs or motions for rehearing or reconsideration that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of Lead Counsel's fees and expenses, payment to the Lead Plaintiffs, the Plan of Allocation of the Settlement Fund, as hereinafter defined, or the procedures for determining Authorized Claimants' recognized claims.

868364_1

1.10 "Individual Defendants" means Georges Karam, Deborah Choate, Michael Elias, James Patterson, David Ong, Hubert de Pesquidoux, Dominique Pitteloud, Alok Sharma, Zvi Slonimsky and T. Craig Miller.

1.11 "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit B and containing a release discharging all Released Claims that any Lead Plaintiff or other Class Member has against any Released Party.

1.12 "Lead Counsel" means Robbins Geller Rudman & Dowd LLP and Brower Piven, A Professional Corporation.

1.13 "Lead Plaintiffs" means Gwendolyn January, Venugopal Nalakonda, Scott M. Callan, Dave Auyeung and Joseph C. Raines.

1.14 "Litigation" means Civil Action No. 11-cv-06341-PAC in the United States District Court for the Southern District of New York.

1.15 "Net Settlement Fund" means the Settlement Fund less any attorneys' fees, costs, expenses, and interest and any award to the Lead Plaintiffs, provided for herein or approved by the Court and less notice and administration costs, Taxes and Tax Expenses, and other Court-approved deductions.

1.16 "Notice Date" means the date on which Lead Counsel shall cause a copy of the Notice and Proof of Claim and Release, substantially in the forms of Exhibits A-1 and A-2 attached hereto, to be mailed by First-Class Mail to all Class Members who can be identified with reasonable effort.

1.17 "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association,

868364_1

government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.18    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses, and interest, as well as Lead Plaintiffs' expenses, if any, as may be awarded by the Court. Any Plan of Allocation is not part of this Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.19    "Related Parties" means each of a Defendant's families, parent entities, business units, business divisions, associates, affiliates or subsidiaries and each and all of the past, present, or future officers, directors, stockholders, employees, attorneys, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, insurers, reinsurers, engineers, advisors or agents, heirs, executors, trustees, general or limited partners or partnerships, personal representatives, estates, administrators, of each of them or their affiliates or subsidiaries, and each of their respective predecessors, successors and assigns or other Persons or other entities in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant, and any other representatives of any of these Persons or other entities, whether or not any such Related Parties were named, served with process or appeared in the Litigation.

1.20    "Released Claims" shall include, without limitation, (i) any and all claims set forth in any actual or proposed complaint filed in the Litigation, including, without limitation, all claims set forth in the Consolidated Amended Complaint and the proposed Second Consolidated Amended Complaint, and (ii) any and all other claims and causes of action of every nature and description, whether known or unknown, whether suspected or unsuspected, whether disclosed or undisclosed,

- 8 -

whether contingent or absolute, whether liquidated or unliquidated, and whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the purchase of Sequans ADSs during the Class Period, and any of the acts, facts, statements, misstatements or omissions that were or could have been alleged by Lead Plaintiffs in the Litigation, except for claims relating to the enforcement of the Settlement (collectively, the "Release"). This Release extends to all Released Persons. "Released Claims" includes "Unknown Claims" as defined in ¶1.28 hereof.

1.21    "Released Persons" means each and all of the Defendants and each of the Defendants' Related Parties.

1.22    "Settlement" means the settlement to be consummated under this Stipulation, including, without limitation, the Settlement Amount and the provision for the Released Claims and the Released Persons as contained herein, between and among (i) Lead Plaintiffs, on behalf of themselves and the Class Members, and (ii) Defendants.

1.23    "Settlement Amount" means Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000.00) in cash to be paid by or on behalf of Defendant Sequans pursuant to ¶2.1 of this Stipulation.

1.24    "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

1.25    "Settling Parties" means, collectively, the Defendants and Lead Plaintiffs.

1.26    "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax, and additional amounts imposed with respect thereto) imposed by any governmental authority, including income tax and other taxes and charges on or regarding franchises, windfall or other profits, gross receipts, property, sales, use, capital stock, payroll, employment, social security, workers' compensation,

- 9 -

unemployment compensation or net worth; taxes or other charges in the nature of excise, withholding ad valorem, stamp, transfer, value added or gains taxes; license registration and documentation fees; and customs duties, tariffs, and similar charges.

    1.27    "Underwriter Defendants" means UBS Limited and Jefferies & Company, Inc.

    1.28    "Unknown Claims" means any Released Claims that any Lead Plaintiff or Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision not to object to this Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Lead Plaintiffs expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. Lead Plaintiffs and Class Members may hereafter discover facts in addition to or different from those that he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiffs shall expressly settle and release and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or

- 10 -

non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

**2.    The Settlement**

      **a.    The Settlement Fund**

2.1    (a)    In consideration of full and final settlement, satisfaction, compromise, and release of the Released Claims, and subject to the provisions of this Stipulation, including ¶8.3, within ten (10) days of execution of this Stipulation, Defendant Sequans shall pay or cause to be paid $200,000 by check or wire transfer into an interest-bearing escrow account in accordance with instructions to be provided to Sequans by the Escrow Agent. The remainder of the Settlement Amount shall be transferred to the Escrow Agent within ten (10) days of the Court's issuance of an order preliminarily approving the Settlement. Lead Counsel shall provide Defendants with the necessary details of the Settlement account (name/address of bank, routing number, account number, and account name) within five (5) days of execution of this Stipulation. The Escrow Agent shall deposit the Settlement Amount in a segregated escrow account maintained by the Escrow Agent.

      (b)    With the exception of amounts disbursed for providing notice to the Class, customary administration costs, Taxes, and the payment of any awarded attorneys' fees and expenses as set forth in ¶7.2, the Settlement Amount (including accumulated interest) shall not be distributed until the Judgment becomes Final.

**b.    The Escrow Agent**

2.2    The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in short term United States Agency or Treasury Securities or other instruments backed by the full faith and credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.

2.3    The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an order of the Court, or with the written agreement of counsel for Defendants.

2.4    Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.

2.5    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned to the parties who deposited such funds pursuant to the Stipulation and/or further order(s) of the Court.

2.6    Without further order of the Court, the Settlement Fund may be used by Lead Counsel to pay reasonable costs and expenses actually incurred in connection with providing notice to the Class, locating Class Members, soliciting claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim forms, and paying escrow fees and costs, if any ("Notice and Administration Expenses").

868364_1

c.    **Taxes**

2.7    (a)    The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.7, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.   Such elections shall be made in compliance with the procedures and requirements contained in such regulations.   It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)    For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the election described in ¶2.7(a) hereof) shall be consistent with this ¶2.7 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.7(c) hereof.

(c)    All (a) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this ¶2.7 (including, without

- 13 -

limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.7) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons and their counsel shall have no liability or responsibility for any Taxes or Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)).  The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.7.

### d.   Termination of Settlement

2.8   In the event that the Stipulation is not approved or the Stipulation is terminated, canceled, or fails to become effective for any reason, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing in connection with the Settlement provided for herein (up to a maximum of $200,000), shall be refunded pursuant to written instructions from counsel to the Defendants in accordance with ¶8.5 herein. Thus, the minimum amount returned to the party paying the Settlement Amount (Sequans or any party paying

- 14 -

the Settlement Amount on its behalf) would be $2,050,000, although the amount could be larger. Lead Counsel shall be responsible for and ensure the repayment of such funds.

### 3.    Preliminary Approval Order and Settlement Hearing

3.1    Promptly after execution of the Stipulation, Lead Counsel shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, certification of the Class for settlement purposes, and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice, substantially in the forms of Exhibits A-1 and A-3 attached hereto. The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶7.1 hereof, and the date of the Settlement Hearing as defined below.

3.2    Lead Counsel shall request that after notice is given, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation, the Fee and Expense Application and the Lead Plaintiffs' request for expenses, if any.

### 4.    Releases

4.1    Upon the Effective Date, as defined in ¶1.7 hereof, the Lead Plaintiffs shall have, and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers the Proof of Claim and Release or shares in the Settlement Fund. Claims to enforce the terms of this Stipulation are not released.

- 15 -

4.2     The Proof of Claim and Release to be executed by Class Members shall be substantially in the form contained in Exhibit A-2 attached hereto.

4.3     Upon the Effective Date, as defined in ¶1.7 hereof, all Class Members, and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any Released Claims against any of the Released Persons in any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, or other forum of any kind (whether within the United States or not).

4.4     Upon the Effective Date, as defined in ¶1.7 hereof, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Lead Plaintiffs, their counsel, and the Class (except any Class Member who opts out of the Settlement) for all claims arising out of the initiation, litigation, and resolution of the Litigation, except claims to enforce the Settlement.  The Defendants and the Lead Plaintiffs, and their counsel, agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure, and that the proposed final judgment will contain a statement to reflect this compliance.  No party shall assert or pursue any action, claims or rights that any current or former party violated any provision of Rule 11 of the Federal Rules of Civil Procedure or otherwise assert that the case was not brought or defended in good faith.

**5.     Dismissal of Litigation**

5.1     Upon the Court entering the Judgment, as defined in ¶1.11 hereof, the Litigation shall be dismissed against the Defendants with prejudice and without costs.

**6.     Administration and Calculation of Claims and Supervision and
         Distribution of the Settlement Fund**

6.1     The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall administer and calculate the claims

- 16 -

submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

6.2    The Settlement Fund shall be applied as follows:

(a)    to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, locating Class Members, soliciting Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any, as described in ¶2.6 hereof;

(b)    to pay the Taxes and Tax Expenses described in ¶2.7 hereof;

(c)    to pay attorneys' fees and expenses of Lead Counsel (the "Fee and Expense Award"), and any Lead Plaintiff's expenses, if and to the extent allowed by the Court; and

(d)    after the Effective Date, to distribute the balance of the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.3    After the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with ¶¶6.4-6.10.

6.4    Within ninety (90) days after the Notice Date or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim.

- 17 -

6.5     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment. Notwithstanding the foregoing, Lead Counsel shall have the discretion to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Settlement Fund is not materially delayed thereby.

6.6     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  If there is any balance remaining in the Net Settlement Fund after six (6) months from the initial date of distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, allocate such balance among Authorized Claimants in an equitable and economic fashion.  Thereafter, any balance which still remains in the Net Settlement Fund shall either be distributed to the Authorized Claimants or donated to an appropriate non-sectarian, not-for-profit, 501(c)(3) organization identified by Lead Counsel.

6.7     Payment from the Net Settlement Fund made pursuant to and in the manner set forth above shall be deemed conclusive of compliance with this Stipulation as to all Authorized Claimants.

6.8     The Defendants and their Related Parties shall have no responsibility for, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses or any losses incurred in connection therewith.  No Person shall have any claim of any

868364_1

kind against the Defendants or their Related Parties with respect to the matters set forth in ¶¶6.1-6.10 hereof; and the Class Members, Lead Plaintiffs and Lead Counsel release the Defendants and their Related Parties from any and all liability and claims arising from or with respect to the investment or distribution of the Settlement Fund.

6.9    No Person shall have any claim against Lead Plaintiffs, Lead Counsel or the Claims Administrator, or any other Person designated by Lead Counsel, based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.  Other than claims that distributions were not made substantially in accordance with the Stipulation and the Settlement contained herein, all claims of any Class Member against Lead Plaintiffs, Lead Counsel or the Claims Administrator concerning or arising out of this Litigation will be forever extinguished.

6.10    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to modify, terminate, or cancel the Stipulation or affect or delay the finality of the Court's Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.

**7.    Lead Counsel's Attorneys' Fees and Expenses**

7.1    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for: (a) an award of attorneys' fees; plus (b) expenses in connection with prosecuting

868364_1

the Litigation; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. Lead Counsel reserve the right to make additional applications for fees and expenses incurred.

7.2     Any attorneys' fees and expenses awarded to Lead Counsel by the Court shall be paid to Lead Counsel immediately upon award, notwithstanding the existence of any timely-filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's several obligation to make appropriate refunds or repayments of any such funds in the event the Settlement is not finally approved or the Settlement is overturned on appeal as more particularly set forth below. Lead Counsel may thereafter allocate the attorneys' fees among other counsel for any named plaintiff or the Class in a manner in which they in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

7.3     If the Effective Date does not occur, or the Settlement is terminated in accordance with ¶8.3 below, Lead Counsel shall be obligated and liable to repay to the Settlement Fund all fees, expenses, and costs, previously paid or otherwise transferred to Lead Counsel from the Settlement Fund plus interest thereon on at the same rate as earned on the Settlement Fund. If any fee or expense award is reversed or modified by a court on appeal or otherwise, Lead Counsel shall be obligated and liable to repay to the Settlement Fund an amount corresponding to that portion of any fee and expense award that is reversed or modified. Any repayment required by this provision shall be made within ten (10) business days of receiving notice from counsel for any Defendant, or from a court of appropriate jurisdiction, that such repayment is required.

7.4     Any Lead Plaintiff may submit an application for his or her expenses incurred in the prosecution of the Litigation. However, in the event that the Effective Date does not occur, or the

- 20 -

judgment or the order approving an application for time and expenses is reversed or modified, or the Stipulation is canceled or terminated for any other reason, then any Lead Plaintiff shall within five (5) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund such amount previously paid to it from the Settlement Fund for time and expenses in an amount consistent with such reversal or modification, plus interest thereon.

7.5     The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses, or the expenses of any Lead Plaintiff, to be paid out of the Settlement Fund, are not part of the Settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any Lead Plaintiff's expense application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth therein.

7.6     Any award of attorneys' fees and expenses to Lead Counsel shall be paid exclusively from the Settlement Fund.  In no event shall Defendants otherwise be obligated to pay for such attorneys' fees and expenses.  Defendants and their Related Parties shall have no responsibility for any payment of attorneys' fees and expenses to Lead Counsel or payment of expenses to any Lead Plaintiff.

7.7     Defendants and their Related Parties shall have no responsibility for the allocation among Lead Plaintiffs' counsel, and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

- 21 -

868364_1

**8.    Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

8.1    The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)    Defendant Sequans has timely made or caused to be made its contributions to the Settlement Fund, as required by ¶2.1 hereof;

(b)    Defendants have not exercised the option set forth in ¶8.3;

(c)    the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof;

(d)    the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto; and

(e)    the Judgment has become Final, as defined in ¶1.9 hereof.

8.2    Upon the Effective Date, any and all remaining interest or right of the Defendants or the Defendants' insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If the conditions specified in ¶8.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶8.5 hereof unless Lead Counsel and counsel for the Defendants mutually agree in writing to proceed with the Stipulation.

8.3    The Defendants shall have the option to terminate the Settlement in the event that (a) the Settlement is not approved by the Court without material modification, including, but not limited to, any modification of the Release, or (b) Class Members representing more than a certain percentage of Sequans ADSs sold to the public in the initial public offering have timely and validly excluded themselves from the Class, as set forth in a separate agreement (the "Supplemental Agreement") executed between the Lead Plaintiffs and the Defendants. If the Court requires that the Supplemental Agreement be filed, it shall be filed under seal with the Court.

- 22 -

868364_1

8.4     In order to effectuate the provisions of ¶8.3 hereof, the schedule reflected in the Preliminary Approval Order, substantially in the form of Exhibit A, shall provide that any requests for exclusion must be postmarked (or hand delivered) no later than fifty-five (55) days after the Notice Date.  To be valid, a request for exclusion must state all of the information requested in question 13 of the Notice attached hereto as Exhibit A-1.  Upon receiving any request(s) for exclusion, Lead Counsel shall provide within three (3) business days copies of such request(s) to Defendants' counsel via facsimile or electronic mail, and in any event not less than twenty-one (21) days prior to the Settlement Hearing.  It is a material term of this Stipulation that no Member of the Class may opt out of or be otherwise excluded from the Settlement any later than fifty-five (55) days after the Notice Date.

8.5     Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by counsel for the Defendants or Lead Counsel, the Settlement Fund, less expenses that have either been disbursed pursuant to ¶¶2.6 and 2.7 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶2.6 and 2.7 hereof, in both cases, up to a maximum of $200,000 in total, or any funds received by Lead Counsel shall be refunded as directed by Defendants' counsel, in all cases including accrued interest.  Thus, the minimum amount returned to the party paying the Settlement Amount (Sequans or any party paying the Settlement Amount on its behalf) would be $2,050,000, although the amount could be larger.  Lead Counsel shall be responsible for and ensure repayment of such funds. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, directly to the entities that provided the funds as directed by Defendants' counsel.

- 23 -

868364_1

8.6     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation as of August 9, 2013. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-28, 2.6-2.8, 7.3-7.4, 8.5-8.7, and 9.3-9.4 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to any of Lead Plaintiffs' counsel or expenses to any Lead Plaintiffs shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of the Stipulation.

8.7     If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Lead Plaintiffs nor any of their counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.6 or 2.7, or any expenses already incurred pursuant to ¶¶2.6 or 2.7 (up to a maximum of $200,000 in the aggregate) hereof at the time of such termination or cancellation but that have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶2.8 and 8.5 hereof to the party paying the Settlement Amount (Sequans or any party paying the Settlement Amount on its behalf).

9.     **Miscellaneous Provisions**

The Settling Parties (a) acknowledge that it is their intent to consummate the Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and

868364_1

conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Final Judgment will contain a finding that, during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

9.1     Neither this Stipulation, the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any of the allegations in the Litigation or of the validity of any Released Claim, or of any wrongdoing or liability of the Defendants or their respective Related Parties, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or their respective Related Parties in any civil, criminal, or administrative proceeding in any court, arbitration proceeding, administrative agency, or forum or tribunal in which the Defendants or their respective Related Parties are or become parties, or (c) is or may be deemed to be or may be used as an admission or evidence that any claims asserted by Lead Plaintiffs were not valid or that the amount recoverable was not greater than the Settlement Amount, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Notwithstanding the foregoing, the Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment from this action in any other

- 25 -

action that may be brought against them with respect to any Released Claims in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Settling Parties may file the Settlement Agreement and/or the Judgment in any proceedings that may be necessary to consummate or enforce the Settlement Agreement, the Settlement, or the Judgment.

9.2    Except as Lead Counsel and Defendants' counsel may otherwise in writing agree, to the extent permitted by law, all orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation. While Defendants retain the right to deny that the claims asserted in this Litigation were meritorious, the Lead Plaintiffs, Defendants, Lead Counsel and Defendants' counsel agree not to assert in any forum that this Litigation was brought or defended in bad faith or without a reasonable basis, and shall refrain from any accusations of wrongful or actionable conduct by any party concerning the prosecution and resolution of the Litigation.

9.3    All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.4    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.5    The Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Settling Parties and no representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs.

- 26 -

9.6     Lead Counsel, on behalf of the Class, are expressly authorized by the Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which that they deem appropriate.

9.7     Lead Plaintiffs and their counsel represent and warrant that none of the claims or causes of actions that could have been alleged in the Litigation have been assigned, encumbered, or in any manner transferred in whole or in part.

9.8     Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Settling Party hereto hereby warrants that such Person has the full authority to do so.

9.9     The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

9.10     The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

9.11     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.12     The rights and obligations of the Settling Parties shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice-of-law principles.

868364_1

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by

their duly authorized attorneys, dated October 31, 2013.

ROBBINS GELLER RUDMAN
&  DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
EVAN J. KAUFMAN
CHRISTOPHER M. BARRETT
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
ekaufman@rgrdlaw.com
cbarrett@rgrdlaw.com

ROBBINS GELLER RUDMAN
&  DOWD LLP
ELLEN GUSIKOFF STEWART

ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

BROWER PIVEN, A Professional Corporation
DAVID A.P. BROWER
BRIAN C. KERR
475 Park Avenue South, 33rd Floor
New York, NY  10016
Telephone:  212/501-9000
212/501-0300 (fax)
brower@browerpiven.com
kerr@browerpiven.com

Lead Counsel for the Class

- 28 -

868364_1

ORRICK, HERRINGTON & SUTCLIFFE LLP
MICHAEL D. TORPEY
JAMES N. KRAMER
JAMES E. THOMPSON


_____
        JAMES N. KRAMER

The Orrick Building
405 Howard Street
San Francisco, CA  94105
Telephone:  415/773-5700
415/773-5759 (fax)

Attorneys for Defendants Sequans
Communications S.A., George Karam, Deborah
Choate, Michael Elias, James Patterson, David
Ong, Hubert de Pesquidoux, Dominique Pitteloud,
Alok Sharma, Zvi Slonimsky and T. Craig Miller

COVINGTON & BURLING LLP
MARK P. GIMBEL
DAVID W. HALLER


_____
        MARK P. GIMBEL

The New York Times Building
620 Eighth Avenue
New York, NY  10018
Telephone:  212/841-1000
212/841-1010 (fax)

Attorneys for Defendants UBS Limited and
Jefferies & Company, Inc.

- 29 -

868364_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 7, 2013.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  elleng@rgrdlaw.com

## Mailing Information for a Case 1:11-cv-06341-PAC

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Christopher Michael Barrett**
  cbarrett@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Jeffrey A. Berens**
  jeff@dyerberens.com

- **David A.P. Brower**
  brower@browerpiven.com,reception@browerpiven.com

- **Marshall Pierce Dees**
  mdees@holzerlaw.com

- **Michael Ira Fistel , Jr**
  mfistel@holzerlaw.com,cyoung@holzerlaw.com,cmoore@holzerlaw.com

- **Mark Putnam Gimbel**
  mgimbel@cov.com,maony@cov.com

- **Richard William Gonnello**
  rgonnello@faruqilaw.com,ttang@faruqilaw.com,sbentsianov@faruqilaw.com,msullivan@faruqilaw.com,ecf@faruqilaw.com,fmcconville@faruqilaw.com,dbehnke@fa

- **David William Haller**
  dhaller@cov.com,maony@cov.com

- **Barbara J. Hart**
  bhart@lowey.com

- **Evan Jay Kaufman**
  ekaufman@rgrdlaw.com

- **Brian C. Kerr**
  kerr@browerpiven.com

- **James N. Kramer**
  jkramer@orrick.com,jcopoulos@orrick.com,jthompson@orrick.com,clouie@orrick.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,lpvega@pomlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

- **Michael D. Torpey**
  mtorpey@orrick.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Charles J. Piven
Brower Piven, A Professional Corporation
1925 Old Valley Road
Stevenson, MD 21153

James E Thompson
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
```